UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARUN K.[1],

      Petitioner,

     v.

SERGIO ALBARRAN, et al.,

      Respondents.

No. 1:26-cv-00518-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Arun K.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first names and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I.      FACTUAL BACKGROUND

Petitioner is a native and citizen of India and an asylum applicant in the United States. (ECF No. 2-1 at 4.)  On October 15, 2024, Petitioner entered the United States seeking protection and was initially apprehended by immigration authorities.  (ECF No. 1 at 2.)  The next day, the U.S. Department of Homeland Security ("DHS") released Petitioner on his own recognizance under 8 U.S.C. § 1226.  (*Id.*)  Petitioner then filed an application for asylum and his application is still pending.  (*Id.*)

Petitioner asserts he does not have a criminal record, has no history of violence or dangerous behavior, and has consistently demonstrated compliance with immigration authorities throughout his detention.  (ECF No. 1 at 4.)  Nevertheless, on August 2, 2025, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") at his home without any notice or a hearing.  (*Id.* at 5.)  Respondents further denied Petitioner a post-detention bond hearing.  (*Id.* at 5.)

Petitioner has now been detained nearly six months without a hearing on the basis of a DHS policy change.  (*See id.*)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*See* ECF Nos. 1, 2.)

## II.      STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner

2

must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.    ANALYSIS**[2]

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.    Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[3] The Court discusses each claim in turn.

*i.   Violation of the INA*

Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants for admission and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025

---

[2]    The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without notice.  *See* Fed. R. Civ. P. 65(b).  Petitioner contacted Respondents about instant motion prior to filing and served Respondents via email.  (*See* ECF No. 2 at 4–6.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3]    Petitioner also claims that Respondents have violated INA's implementing regulations, the Administrative Procedure Act, the equal protection guarantee of the Fifth Amendment, and the Suspension Clause.  (ECF No. 1 at 12–21.)  Finding relief warranted under Petitioner's procedural due process and INA claims, the Court declines to address cumulative violations.

("DHS's July Policy"), the Government consistently applied § 1226(a), not § 1225(b), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

Courts nationwide, including this one, have overwhelmingly rejected the Government's new legal position and have found DHS's July Policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

Petitioner asserts he is being unlawfully detained under § 1225(b)(2) when § 1226(a) governs his detention. (ECF No. 2 at 5–15.) This Court agrees. Section 1225(b)(2) applies only to "applicants for admission" "seeking admission" — a category that does not include noncitizens like Petitioner who have already entered the United States and are residing here at the time ICE re-detains them. *See Morales-Flores*, 2025 WL 3552841, at *3. Moreover, Petitioner's release documents state that he was released in accordance with 8 U.S.C. § 1226. (ECF No. 1-4.) This Court has made its position on this statutory question clear. *Id.* Absent new argument, case law, or distinguishable facts, this Court will not reconsider its position.

Thus, Petitioner is subject to § 1226(a) and is entitled to the process that statute requires, including a bond hearing at a minimum. Yet, Respondents have not provided any such hearing to Petitioner in nearly six months of detention. (ECF No. 1 at 5.) Accordingly, Petitioner is likely to succeed on the merits of his claim that Respondents have violated the INA and improperly subjected him to mandatory detention without a hearing.

### ii. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

4

These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a)      Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody in 2024. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. During his release, Petitioner asserts he complied with all conditions of his release; he does not have a criminal record; and he has no history of violence or dangerous behavior. (ECF

5

No. 1 at 4.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*b)      Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  Petitioner has built a life and relationships during his release.  Despite that, Petitioner has now been detained for nearly six months without an opportunity to be heard.  (ECF No. 1 at 5.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining

6

individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is ongoing and there is no removal order. (*See* ECF No. 1 at 2.) Additionally, before releasing him on his own recognizance in 2024, DHS would have found that Petitioner was not a danger to the community nor a flight risk. This Court has no reason to doubt Petitioner's assertion that he has complied with all conditions of his release and, thus, he was not a flight risk at the time of his detention. Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and hearing to determine whether detention was warranted. Respondents have not provided either and they have affirmatively denied him a post-deprivation bond hearing. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the

7

economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained. In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner ARUN K. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of his release, Respondents must also return all of Petitioner's documents and possessions.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing the terms of this Order.  Respondents shall file responsive papers by **January 29, 2026**.  Petitioner may file a reply, if any, by **February 3, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.  Respondents' failure to respond to the Order to Show Cause shall be construed as its non-opposition to the Court granting a preliminary injunction on the same terms and conditions imposed in this Order. *See* L.R. 230(c).

5. Petitioner is ORDERED to immediately serve this Order, along with Petitioner's A # and all documents filed in this case to date, on Respondents with a copy via email to: usacae.ecf2241-imm@usdoj.gov.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

9

regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: January 22, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10